UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD CLARK,<br><br>    Plaintiff,<br><br>    v.<br><br>WESTBRAE NATURAL, INC.,<br><br>    Defendant. | Case No. 20-cv-03221-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 23 & 24 |

Howard Clark alleges that the use of the word "vanilla" on the label of Westbrae Natural, Inc.'s organic unsweetened vanilla soymilk ("the Product") misrepresents to consumers that the Product's vanilla flavor is derived exclusively from the vanilla bean plant. Plaintiff makes various California consumer protection law claims on his own behalf and on behalf of a proposed class of California consumers. He seeks damages, restitution, and an injunction to stop Defendant's allegedly false and misleading marketing practice regarding the Product. Defendant's motion to dismiss the first amended complaint and motion for judicial notice is now pending before the Court.[1] (Dkt. Nos. 23 & 24.) Having carefully considered the pleadings and the parties' briefs, and having heard oral argument on November 19, 2020, the Court GRANTS Defendant's motion to dismiss the complaint with leave to amend.

## BACKGROUND

**A.    First Amended Complaint Allegations**

Defendant sells the Product as pictured below:

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6, 14.)



(Dkt. No. 20 at 2, First Amended Complaint, ("FAC") ¶ 1.[2])  Plaintiff interpreted this label as conveying that the Product's vanilla flavor is derived exclusively from the vanilla bean.  (*Id.* ¶¶ 9, 26.)  Indeed, an August 2020 survey of over 400 consumers showed that over 69.5% of the consumers believed the "vanilla" representation on the Product meant the Product's vanilla flavor comes exclusively from the vanilla bean.  (*Id.* ¶ 2.)

"[S]cientific testing in January of 2020 of the Products revealed that the vanilla flavoring of the Product does not come exclusively from the vanilla bean."  (*Id.* ¶ 3.)  A gas chromatography-mass spectrometry ("GC-MS") analysis revealed the Product contained a high concentration of vanillin relative to the three other compounds most commonly associated with vanilla, indicating that the vanillin comes from a non-vanilla source.  (*Id.* ¶¶ 19-23.)

Plaintiff alleges that he would not have purchased or paid a premium price for the Product if he had realized that its vanilla flavor does not come exclusively from the vanilla bean.  (*Id.* ¶ 27.)  Plaintiff would purchase the Product again in the future if the Product was "reformulated

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

such that the vanilla flavor came exclusively from the vanilla bean or the Products were not deceptively labeled." (*Id.* ¶ 9.)

### B.  Procedural Background

Plaintiff filed his Complaint on behalf of himself and the proposed class in this Court on May 12, 2020, alleging that the Product is made with no or negligible amounts of natural vanilla and should be labeled "artificially flavored." (Dkt. No. 1.) On May 24, 2020, Plaintiff sent Defendant a CLRA Notice via certified mail that provided Defendant notice of the misconduct and requested that the Defendant cure the misconduct within 30 days. (FAC ¶ 75.) Defendant filed a motion to dismiss the original complaint on August 10, 2020. (Dkt. No. 17.) In response, Plaintiff filed his FAC, omitting many of the background facts from the original complaint and withdrawing allegations that the Product contained no flavor derived from the vanilla bean and thus must be labelled as artificially flavored. (Dkt. No. 20.) The FAC makes claims under California consumer protection statutes (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.*, (2) California's false advertising law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.*, and (3) the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et. seq*. Defendant's motion to dismiss followed. (Dkt. No. 23.) Defendant also filed two statements of recent decision on November 2, 2020. (Dkt. Nos. 29, 30.)

## JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of (1) the Product's full label, and (2) the Product's webpage. (Dkt. No. 24.) Federal Rule of Evidence 201 authorizes a court to take judicial notice of facts "not subject to reasonable dispute because [they] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Courts "regularly decline to consider declarations and exhibits submitted in support of or in opposition to a motion to dismiss, however, if they constitute evidence not referenced" in the complaint. *Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) (internal citation omitted). Plaintiff does not oppose judicial notice.

3

The Court GRANTS the motion for judicial notice as to the product's label. "Other courts in this district have taken judicial notice of images that more completely display the packaging in question, on the ground that the packaging of the defendant's product is publicly available and not subject to reasonable dispute." *Prescott v. Nestle USA, Inc.*, No. 19-CV-07471-BLF, 2020 WL 3035798, at *2 (N.D. Cal. June 4, 2020) (internal quotation marks and citation omitted) (taking judicial notice of a picture of the packaging of a product). The contents of the label are alleged in the FAC, form the basis for Plaintiff's claims, and are not disputed by the Parties. (*See* FAC ¶ 1.) Therefore, judicial notice of the label is proper.

However, judicial notice of the webpage is improper. "Federal courts . . . have expressed skepticism as to whether it is appropriate to take judicial notice of information or documents appearing on websites that are created and maintained by a party to the litigation." *Gerritsen*, 112 F. Supp. 3d at 1030 (collecting cases). The contents of the webpage are not alleged in the FAC and do not form the basis of Plaintiff's claims, other than a general reference to marketing in Plaintiff's false advertising claim. (FAC ¶¶ 60, 61.) Moreover, the website is maintained to further the business interests of Defendant and is not a source of public information. *See Gerritsen*, 112 F. Supp. 3d at 1030 (holding that judicial notice of defendant's website was improper where defendant was not a government body and the purpose of the website was not to provide public information). Therefore, the Court DENIES Defendant's request for judicial notice as to the webpage.[3]

## DISCUSSION

### A. Deception Claims

Defendant's primary argument is that Plaintiff's UCL, CLRA, and false advertising claims must be dismissed because the FAC fails to allege that a reasonable consumer would be deceived

---

[3] The cases that Defendant relies upon are inapposite because in each the contents of the website were alleged in the complaint. *See Rearden LLC v. Rearden Commerce, Inc.*, F. Supp. 2d 1006, 1013 n.3 (N.D. Cal. 2006) (taking judicial notice of the parties' websites where the domain names were the subject of a trademark infringement suit); *Caldwell v. Caldwell*, 420 F. Supp. 2d 1102, 1105 n.3 (N.D. Cal. 2006) (taking judicial notice of a website when the contents of the website were alleged to infringe on plaintiff's First Amendment Rights), *aff'd*, 545 F.3d 1126 (9th Cir. 2008); *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000) (taking judicial notice of a website where the contents were alleged to constitute false endorsement by a celebrity), *aff'd*, 292 F.3d 1139 (9th Cir. 2000).

4

by the "vanilla" label into believing that the Product's vanilla flavor is derived exclusively from the vanilla bean.

Plaintiff concedes (with one exception noted below) that to prevail on his UCL, CLRA, and false advertising claims he must satisfy the reasonable consumer standard. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this standard, Plaintiff must "show that members of the public are likely to be deceived." *Id.* (internal quotation marks and citation omitted). This showing requires more than a mere possibility that Defendant's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003); *see id.* at 504 (rejecting a "least sophisticated consumer" standard). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision [on a motion to dismiss]." *Williams*, 552 F.3d at 938 (internal citation omitted).

Plaintiff has not alleged facts that plausibly support an inference that a reasonable consumer would interpret "vanilla" on the Product's label to mean that the Product's flavor is derived exclusively from the vanilla bean. The word "vanilla" itself does not suggest to the reasonable consumer that the flavor comes exclusively from the vanilla bean. *See Pichardo v. Only What You Need, Inc.*, Case No. 20-cv-0493 (VEC), 2020 WL 6323775, at* 3 (S.D.N.Y. Oct. 27, 2020) (finding that a reasonable consumer would not believe the label "smooth vanilla" itself means that the vanilla flavor is exclusively or even mostly comes from vanilla extract (the vanilla bean); *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (affirming a Rule 12(b)(6) dismissal on the grounds that no reasonable consumer would believe a soda labelled "diet" meant the soda would help the customer lose weight). *Vizcarra v. Unilever United States, Inc.*, No. 4:20-CV-02777-YGR, 2020 WL 4016810 (N.D. Cal. July 16, 2020), does not suggest otherwise as the court did not address whether a reasonable consumer would be deceived by the label "natural vanilla."

Further, the label does not contain any other words or pictures that suggest the vanilla flavor is derived exclusively from the vanilla bean. *See Steele v. Wegmans Food Markets, Inc.*,

5

No. 19 CIV.9227 (LLS), 2020 WL 3975461, at *2 (S.D.N.Y. July 14, 2020) (holding a label that represented that vanilla ice cream is made with "natural vanilla flavor" did not imply to a reasonable consumer that it was flavored predominantly with the vanilla bean); *compare with Sharpe v. A&W Concentrate Co.*, No. 19-CV-768 (BMC), 2020 WL 4931045, at *5 (E.D.N.Y. Aug. 24, 2020) (holding that the plaintiffs plausibly alleged that label reading "made with aged vanilla" implies that the product's vanilla flavor is derived predominantly from the vanilla plant).

Plaintiff's barebones allegation regarding the results of a 2020 survey which allegedly showed that 69.5% of 400 consumers believed that "the 'Vanilla' representation on the Product meant that the Product's flavor comes exclusively from the vanilla bean" (*see* FAC ¶ 2), does not push Plaintiff's reasonable consumer allegation over the plausibility line. *See Tucker v. Post Consumer Brands, LLC*, No. 19-CV-03993-YGR, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (noting that a consumer survey on its own cannot satisfy the reasonable consumer test); *Yu v. Dr. Pepper Snapple Group, Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *4-5 (N.D. Cal. October 6, 2020) (same).

In *Becerra*, for example, the plaintiff similarly alleged that a survey of 800 soft drink consumers confirmed that most consumers expect a diet soda to help them lose or maintain their weight. 945 F.3d at 1230. The Ninth Circuit nonetheless affirmed the dismissal of the consumer claims on the grounds that the reasonable consumer test was not satisfied as a matter of law.

> As the district court noted, it is difficult to tell what questions the survey asked to reach its conclusions, but it appears to have asked four questions to gauge consumer expectations of diet soft drinks related to one's weight. Of the California consumers, only 12.5 percent expected diet soft drinks to help them lose weight (compared to 15 percent nationwide), while 63.3 percent expected diet soft drinks to help maintain/not affect their weight (compared to 62 percent nationwide).
>
> The survey cannot, on its own, salvage Becerra's claim. Although we must accept the allegations surrounding the survey as true at this stage of the litigation, a reasonable consumer would still understand "diet" in this context to be a relative claim about the calorie or sugar content of the product. The survey does not address this understanding or the equally reasonable understanding that consuming low-calorie products will impact one's weight only to the extent that weight loss relies on consuming fewer calories overall. At bottom, the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word "diet" to mean or make

> plausible the allegation that reasonable consumers are misled by the term "diet."

*Id.* at 1230–31.  Here, unlike *Becerra*, Plaintiff does not even allege what the survey asked so it is impossible to infer that notwithstanding the commonsense interpretation of "vanilla" as not implying flavored exclusively with vanilla bean, Plaintiff has plausibly alleged that it does.  At bottom, the vague survey allegation does not make plausible that reasonable consumers understand that "vanilla" soymilk is flavored exclusively with vanilla bean.

Finally, Plaintiff alleges that "FDA regulations regarding vanilla flavoring effectively establish custom and practice in the industry so that consumers' experience with that custom and practice primes them to infer from the Products' labeling that the Products gets its vanilla flavor from the vanilla bean." (FAC ¶ 14.)  This allegation, however, is only a conclusion; it does not include any facts that plausibly support the inference Plaintiff wants the Court to draw.  Indeed, the only regulation cited in the factual allegations of the Amended Complaint is 21 U.S.C. 101.22(h)(7)(i)(1)(i)-(iii).  (FAC ¶13.)  Yet, the Amended Complaint does not explain how that regulation supports the conclusion as to consumers' experience.

As Plaintiff has not plausibly alleged that a reasonable consumer would expect that vanilla soymilk would derive its vanilla flavor exclusively from vanilla bean all of his deception claims must be dismissed.

### B. Section 17200 Unlawful Claim

At oral argument Plaintiff urged that his section 17200 unlawful claim should survive because he has plausibly alleged that Defendant's labelling violates 21 C.F.R. § 101.22(i)(1). While the Amended Complaint's section 17200 unlawful prong claim for relief generally lists a number of statutes and regulations which Plaintiff alleges Defendant violated (FAC ¶ 41), the complaint does not tether any of its allegations to section 101.22(i)(1); indeed, as explained above, the only regulation cited in the facts section of the Amended Complaint is 21 U.S.C. 101.22(h)(7)(i)(1)(i)-(iii).  Further, Plaintiff's opposition does not cite *any* sections from the Code of Federal Regulations.  Plaintiff has thus also not alleged a plausible violation of the unlawful prong of section 17200 to the extent he makes such a claim separate from his deception claims.

7

**C.     CLRA Notice**

Defendant contends that Plaintiff's claims for money damages under the CLRA should be also be dismissed because Plaintiff failed to comply with the CLRA notice requirement. While the Court is dismissing the CLRA claim for failure to plausibly state a claim, it will address the notice issue so that it need not be raised again.

California Civil Code section 1782(a) provides that at least thirty days prior to commencing an action for damages under the CLRA a consumer is required to (1) notify the person alleged to have committed the violations of the CLRA as described in California Civil Code section 1770; and (2) demand that the person "correct, repair, replace, or otherwise rectify the goods or services" in question. Cal. Civ. Code § 1782(a). The notice must be in writing and must be sent by certified or registered mail. *Id.* This notice requirement does not apply where the action is for injunctive relief. Cal. Civ. Code § 1782(d). Not less than 30 days after the commencement of an action for injunctive relief, and after sending of the notice, the consumer may amend her complaint without leave of the Court to include a request for damages. *Id.* A demand letter under section 1782(a) can be made on behalf of an individual consumer or on behalf of a class of consumers. *See Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 590 (1984), *disapproved of on other grounds by Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009) (holding that a demand letter under section 1782(a) can set forth "an individual or class grievance" with respect to alleged violations of section 1770).

Here, Plaintiff has complied with the CLRA notice requirements. Plaintiff's Complaint was filed on May 12, 2020 and requested only injunctive relief under the CLRA, which does not require notice under section 1782(d). *See Gonzales v. CarMax Auto Superstores, LLC*, 845 F.3d 916, 918 (9th Cir. 2017) (finding that the notice requirement was met when plaintiff did not send notice before filing but only sought injunctive relief). On May 24, 2020—within 30 days of the commencement of the action—Plaintiff sent Defendant a CLRA notice. (FAC ¶ 75.) Plaintiff's Amended Complaint pleading damages under the CLRA was filed on August 31, 2020, more than 30 days after Defendant received the notice. (Dkt. No. 20.) Therefore, Plaintiff complied with the requirements of section 1782(d).

Defendant nonetheless argues that Plaintiff sought damages in substance, if not in form, by

8

seeking disgorgement and restitution under the other California consumer protection statutes in his initial Complaint. (*See* Dkt. No. 1 ¶¶ 149, 157, 173, 175.) Notice is required at least thirty days "before filing a CLRA claim for damages." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) (internal citation omitted). As discussed above, Plaintiff filed a claim for damages under the CLRA more than thirty days after notifying Defendant. In *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009), plaintiffs similarly commenced a suit requesting damages under the UCL and California's false advertising law, but only injunctive relief under the CLRA. *Id.* at 1241. The court found that plaintiffs were not required to provide a CLRA notice before filing the original complaint "because they did not seek damages under the CLRA. . . ." *Id.* at 1260. Accordingly, CLRA notice was not required before filing the initial Complaint simply because Plaintiff requested damages under statutes other than the CLRA.

## CONCLUSION

Because Plaintiff has failed to plausibly allege that a reasonable consumer would expect that Defendant's vanilla soymilk derived its vanilla flavor exclusively from the vanilla bean and has failed to otherwise plausibly allege an unlawful prong section 17200 claim, the Court GRANTS Defendant's motion to dismiss the complaint with leave to amend. Plaintiff shall file his amended complaint within 20 days of the date of this Order.

This Order disposes of Dkt. Nos. 23 & 24.

**IT IS SO ORDERED.**

Dated: December 1, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

9