August T. Horvath (admitted *pro hac vice*)
ahorvath@foleyhoag.com
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th floor
New York, NY 10019
Tel: (646) 927-5544
Fax: (646) 927-5599

Jennifer Yoo (SBN 304355)
jyoo@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Tel: (617) 832-1000
Fax: (617) 832-7000

Christopher A. Nedeau (SBN 81297)
NEDEAU LAW P.C.
cnedeau@nedeaulaw.net
750 Battery Street, 7th floor
San Francisco, CA 94111
Tel: (415) 415-4010

Attorneys for Defendant
Westbrae Natural, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| | |
|---|---|
| HOWARD CLARK, individually, and on behalf of those similarly situation, <br><br> Plaintiff, <br><br> v. <br><br> WESTBRAE NATURAL, INC., <br><br> Defendant. | Case No. 3:20-CV-03221-JSC <br><br> **DEFENDANT WESTBRAE NATURAL, INC.'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> Date:  April 8, 2021 <br> Time:  9:00 a.m. <br> Courtroom:  E (San Francisco Courthouse) <br> Judge:  Hon. Jacqueline Scott Corley |

1   **PLEASE TAKE NOTICE** that on April 8, 2021, at 9:00 a.m., or as soon thereafter as

2   the matter may be heard, in Courtroom E of the above-entitled Court, located at 450 Golden Gate

3   Avenue, San Francisco, CA, 94102, Defendant Westbrae Natural, Inc. ("Defendant") will and

4   hereby does move this Court for an Order dismissing Plaintiff's Second Amended Complaint

5   ("Complaint" or "SAC") filed by Plaintiff Howard Clark ("Plaintiff") in the above-captioned

6   action, in its entirety with prejudice.

7       This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

8   Defendant seeks dismissal of the SAC, with prejudice, on the grounds that the SAC fails to state

9   a claim upon which relief can be granted.

10      This Motion is based upon the accompanying Memorandum of Points and Authorities,

11  the files and evidence in this case, and any such evidence and arguments that may be proffered at

12  the hearing of this Motion.

13

14  DATED: February 16, 2021                    Respectfully submitted,

15                                              By: ___*/s/ August Horvath*_____
                                                August Horvath (admitted *pro hac vice)*
16                                              Jennifer Yoo (SBN 304355)

17                                              FOLEY HOAG LLP
                                                Attorneys for Defendant Westbrae Natural,
18                                              Inc.

19

20

21

22

23

24

## STATEMENT OF ISSUES TO BE DECIDED

1.   Does Plaintiff fail to plausibly allege that a reasonable consumer would be deceived by Defendant's packaging to believe that it contains no additional flavoring aside from natural vanilla derived from vanilla beans, such that Plaintiff fails to state a claim for relief under the California consumer protection statutes?

2.   Are Plaintiff's claims preempted by the Food, Drug and Cosmetics Act?

3.   Does Plaintiff fail to plausibly allege that the Product does not comply with relevant federal and state food laws and regulations?

4.   Does Plaintiff lack standing to seek injunctive relief because he fails to plausibly allege a future injury?

5.   Should Plaintiff's claim for unjust enrichment be dismissed?

1

## **Table of Contents**

2

INTRODUCTION............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT....................................................................................................................... 6

    I.      The Product's Labeling Complies with Applicable Regulations........................... 6

    II.     Plaintiff's Claims Are Preempted Because They Seek to Impose
          Additional Requirements Beyond Federal Food Labeling Regulation ................ 12

    III.    No Reasonable Consumer Would Understand the Product's Packaging
          to Represent that the Product Contained Vanilla Solely from Vanilla
          Beans ...................................................................................................................... 13

          A.      Even When Pleading Under the "Unlawful" Prong, Plaintiff
                    Must Still Plead Plausibly that Reasonable Consumers Are
                    Deceived .............................................................................................. 13

          B.      Plaintiff Has Not Plausibly Pled that Reasonable Consumers
                    Are Deceived ....................................................................................... 14

          C.      Plaintiff's Laboratory Analysis Is Worthless ......................................... 17

          D.      Plaintiff's Consumer Survey Is Fatally Flawed and Cannot
                    Save His Deficient Claims .................................................................... 18

    IV.    Plaintiff Lacks Standing to Seek Injunctive Relief ............................................ 21

    V.     Plaintiff's Claims for Restitution Should Be Dismissed..................................... 23

    VI.    The Second Amended Complaint Should Be Dismissed with Prejudice ............. 24

CONCLUSION................................................................................................................. 25

# Table of Authorities

**Cases**

*Barocio v. Bank of Am., N.A.*,
No. C 11-5636 SBA, 2012 U.S. Dist. LEXIS 128617 (N.D. Cal. Sep.10, 2012) .................... 24

*Barreto v. Westbrae Nat., Inc.*,
No. 19-cv-9677 (PKC) 2021 U.S. Dist. LEXIS 3436 (S.D.N.Y. Jan. 7, 2021) ............... passim

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ...................................................................................... 14, 21

*Bush v. Mondelez International, Inc.*,
No. 16-cv-02460-RS, 2016 U.S. Dist. LEXIS 174391 (N.D. Cal. Dec. 16, 2016) ............ 13, 14

*Campion v. Old Republic Home Protections Co.*,
861 F. Supp. 2d 1139 (S.D. Cal. 2012) ................................................................................ 23

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................................................................. 23

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................................... 13

*Chapman v. Pier 1 Impos. Inc.*,
631 F.3d 939 (9th Cir. 2011) ............................................................................................... 22

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................................................. 22

*Clark v. Westbrae Nat., Inc.*,
No. 20-cv-03221-JSC, 2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020) ................. 15

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) .............................................................................................. 24

*Cordes v. Boulder Brands USA, Inc.*,
No. CV 18-6534 PSG (JCx), 2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018) ........ 22

*Cosgrove v. Blue Diamond Growers*,
No. 19 Civ. 8993 (VM) 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020) ....... 1, 15, 16

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018) ............................................................................................... 12

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........................................................................................ 13, 24

*Fernandez v. Atkins Nutritionals, Inc.,*
  No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018) .........23

*Foman v. Davis,*
  371 U.S. 178 (1962) ................................................................................................................25

*Freeman v. Time, Inc.,*
  68 F.3d 285 (9th Circ. 1995)....................................................................................................14

*Garrison v. Whole Foods Mkt. Grp., Inc.,*
  No. 13-cv-05222-VC, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. Jun. 2, 2014)......................22

*Gest v. Bradbury,*
  443 F.3d 1177 (9th Cir. 2006)..................................................................................................22

*Gitson v. Trader Joe's Co.,*
  No. 13-cv-01333-WHO, 2014 U.S. Dist. LEXIS 33936 (N.D. Cal. Mar. 14, 2014)...............12

*Ham v. Hain Celestial Grp., Inc.,*
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) .....................................................................................22

*Hill v. Roll Int'l Corp.,*
  195 Cal. App. 4th 1295, 128 Cal. Rptr. 109 (2011) ................................................................14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
  996 F. Supp. 2d 942 (S.D. Cal. 2014)......................................................................................14

*Jackson v. General Mills, Inc.,*
  No. 18-cv-2634-LAB (BGS), 2019 U.S. Dist. LEXIS 162447 (S.D. Cal. Sept. 20, 2019)......22

*Johnson & Johnson-Merck Consumer Pharms. Co.,*
  19 F.3d 125 (3d Cir. 1994)......................................................................................................20

*Joslin v. Clif Bar & Co.,*
  No. 4:18-cv-04941-JSW, 2019 U.S. Dist. LEXIS 192100 (N.D. Cal. Aug. 26, 2019)............22

*Kwikset Corp. v. Superior Court of Orange County,*
  51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011).................................................13

*Lam v. General Mills, Inc.,*
  859 F. Supp. 2d 1097 (N.D. Cal. 2012) ..................................................................................12

*Lanovaz v. Twinings N. Am., Inc.,*
  No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) ................24

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) ........................................................... 14

*Manchouck v. Mondelez Int'l, Inc.*,
  2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), aff'd 603 F. App'x 632 (9th Cir. 2015) ......... 25

*Meaunrit v. ConAgra Foods Inc.*,
  No. 09-2220, 2010 WL 2867393 (N.D. Cal. July 20, 2010) .................................................. 12

*New Armour Pharm. Co.*,
  67 F.3d 716 (9th Cir. 1995) .................................................................................................. 25

*Nissan Motor Co. v. Nissan Comput. Corp.*,
  204 F.R.D. 460 (C.D. Cal. 2001) .......................................................................................... 25

*Painter v. Blue Diamond Growers*,
  757 F. App'x 517 (9th Cir. 2018) ......................................................................................... 25

*Peviani v. Hostess Brands, Inc.*,
  750 F. Supp. 2d 1111 (C.D. Cal. 2010) ........................................................................... 12, 13

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*,
  292 F. Supp. 2d 594 (D.N.J. 2003) ....................................................................................... 21

*Pichardo v. Only What You Need, Inc.*,
  No. 20-cv-493 (VEC), 2020 U.S. Dist. LEXIS 199791 (S.D.N.Y. Oct. 27, 2020) ................... 1

*Prescott v. Nestle USA, Inc.*,
  No. 19-cv-07471-BLF, 2020 U.S. Dist. LEXIS 99261 (N.D. Cal. June 4, 2020) ................... 22

*Proctor & Gamble v. Hoffmann-La Roche*,
  2006 U.S. Dist. LEXIS 64363 (S.D.N.Y. Sept. 6, 2006) ....................................................... 20

*Proctor & Gamble v. Ultreo, Inc.*,
  574 F. Supp. 2d 339 (S.D.N.Y. 2008) .............................................................................. 19, 20

*Rahman v. Mott's LLP*,
  No. 13-cv-3482 SI, 2014 U.S. Dist. LEXIS 147102 (N.D. Cal. Oct. 15, 2014) ...................... 22

*Rahman v. Mott's LLP*,
  No. 13-cv-03482-SI, 2018 U.S. Dist. LEXIS 164620 (N.D. Cal. Sep. 25, 2018) ................... 23

*Red v. The Kroger Co.*,
  No. 10-1025, 2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2, 2010) ................................ 12

*Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*,

858 F. Supp. 1268 (S.D.N.Y. 1994)........................................................................................20

*Rhynes v. Stryker Corp.,*
No. 10-5619 SC, 2011 U.S. Dist. LEXIS 58286 (N.D. Cal. May 31, 2011)...........................24

*Sonner v. Premier Nutrition Corp,*
962 F.3d 1072 (9th Cir. 2020)..............................................................................................23

*Steele v. Wegmans Food Mrkts. Inc.,*
*No.* 1:19-cv-09227 (LLS), 2020 U.S. Dist. LEXIS 123637 (S.D.N.Y. July 14, 2020)..............1

*Twohig v. Shop-Rite Supermarkets, Inc.,*
No. 20-CV-763, 2021 U.S. Dist. LEXIS 26489 (S.D.N.Y. Feb. 11, 2021) ........................ 1, 15

*Yu v. Dr Pepper Snapple Group, Inc.,*
No. 18-cv-6664, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)...............................................21

*Zaback v. Kellogg Sales Co.,*
No. 3:20-cv-00268-BEN-MSB, 2020 U.S. Dist. LEXIS 109449 (S.D. Cal. June 22, 2020) 2, 8,
17

**Statutes & Regulations**

21 C.F.R. § 101.22 ........................................................................................................ passim

21 C.F.R. § 101.4(b)................................................................................................................9

21 C.F.R. § 170.3(o)(12)..........................................................................................................6

21 C.F.R. § 169 ..................................................................................................7, 9, 10, 11

21 C.F.R. § 172......................................................................................................................9

21 U.S.C. § 343....................................................................................................................6, 13

Fed. R. Civ. P. 9(b).................................................................................................................3

**Other Authorities**

*Control Foundations:Rationales and Approaches*, S.S. Diamond & J.B. Swann (eds.),
TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS: LAW, SCIENCE, AND DESIGN (ABA
2012) at 202 .........................................................................................................................21

W. Shurtleff & A. Aoyagi, HISTORY OF SOYMILK AND OTHER NON-DAIRY MILKS (1226 TO 2013)
(Soyinfo Center 2013). ...........................................................................................................3

1

## INTRODUCTION

The Second Amended Complaint (Dkt. 35, "SAC") is Plaintiff's third attempt to plead sufficient claims against Westbrae Natural Inc. ("Westbrae" or "Defendant"), and a continuation of the over 100 recent cut-and-paste putative class action lawsuits filed by the same plaintiffs' counsel against products that bear the flavor designation "vanilla." This case involves Defendant's WestSoy® Organic Unsweetened Vanilla Soymilk (the "Product"), and whether its "vanilla" designation on the front label communicates to consumers an extensive series of implied messages about the source of the vanilla flavor in the soymilk despite the clear identification of "natural vanilla flavor with other natural flavors" on the ingredients statement. Despite this Court's ruling last month that "[t]he word 'vanilla' itself does not suggest to the reasonable consumer that the flavor comes exclusively from the vanilla bean," Plaintiff continues to allege that it does, and continues to contend – unsupported by any new facts – that the actual contents of the soymilk contradict those implied messages.

Plaintiff's counsel have had little success with these recycled complaints. Recently, five federal courts, besides this Court, have dismissed nearly identical cases brought by the same plaintiff's counsel both in California and New York, including *Barreto v. Westbrae Natural Inc.,* a case involving the same Product at issue here and including identical allegations regarding the vanilla flavor designator. No. 1:19-cv-09677 (PKC), 2021 U.S. Dist. LEXIS 3436 (S.D.N.Y. Jan. 7, 2021); *see also Twohig v. Shop-Rite Supermarkets, Inc.*, 2021 U.S. Dist. LEXIS 26489 (S.D.N.Y. Feb. 11, 2021); *Cosgrove v. Blue Diamond Growers,* 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020); *Pichardo v. Only What You Need, Inc.,* No. 20-cv-493 (VEC), 2020 U.S. Dist. LEXIS 199791 (S.D.N.Y. Oct. 27, 2020)*; Steele v. Wegmans Food Mrkts. Inc.,* 1:19-cv-09227 (LLS), 2020 U.S. Dist. LEXIS 123637 (S.D.N.Y. July 14, 2020); as well as another

California decision in *Zaback v. Kellogg,* No. 3:20-cv-00268 (BEN) (MSB), 2020 U.S. Dist. LEXIS 109449 (S.D. Cal. June 22, 2020).

Plaintiff filed the SAC in response to this Court's dismissal of Plaintiff's Amended Complaint (Order, Dkt. 33), but his amendments only underscore the defects that warranted the first dismissal - namely, that (1) Defendant's packaging complies with all applicable FDA regulations, and (2) no reasonable consumer would assume based on the packaging that all the vanilla flavor in the Product comes exclusively from vanilla beans, remain.  Common sense and common knowledge compel the opposite conclusion of what Plaintiff alleges – that consumers understand "vanilla" as a flavor designator, not as an ingredient claim.  A reasonable consumer would not perceive the misleading messages alleged by Plaintiff to be communicated about the products, and the remedies suggested by Plaintiff would make no difference in a reasonable consumer's interpretation of the packaging.

Plaintiff's other allegations are that Westbrae violated the Food, Drug & Cosmetic Act ("FDCA"), as interpreted by Plaintiff, and the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law").  This theory is fatally flawed, for two primary reasons.  First, Plaintiff incorrectly interprets the FDCA as he mischaracterizes and misconstrues the regulations under the statute, and relies on his own non-expert intuition for his interpretations.  In fact, as detailed below, Westbrae's labels comply with the FDCA.  Second, to plead a cause of action, even if he had plausibly established non-compliance with food regulations, Plaintiff would have to step away from the alleged technical violations of the FDCA, and plausibly plead that a reasonable consumer would interpret the phrase "vanilla soymilk" to mean that all of the vanilla flavor in the soymilk comes from vanilla bean extract.  Plaintiff is unable to do so.

1
2
3
4
5
6

Plaintiff's claims sound in fraud, and therefore must be pled with the particularly required by Fed. R. Civ. P. 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). There are almost no allegations specific to WestSoy soymilk products in the Second Amended Complaint, most of which continues to be copy-and pasted from Plaintiff's counsels' many related lawsuits.  Plaintiff's factual allegations about Westbrae's conduct and the contents of WestSoy Organic Unsweetened Vanilla Soymilk are based on unfounded speculation.

7
8
9
10
11
12

Plaintiff also pleads assorted secondary causes of action that should all fail together with his core false-advertising claims, but in the alternative, should be dismissed because they are inappropriate for the situation alleged by Plaintiff, who therefore does not and cannot plead necessary elements of these causes of action.  Plaintiff further pleads for injunctive relief, which should be dismissed because, by his own admission, he is now aware of the alleged deception, and is at no risk of being deceived and injured in the future.

13
14

### FACTUAL BACKGROUND

15
16
17
18
19
20
21
22

Soymilk has been consumed in China since at least the 1700s, and has become popular in the United States since the 1990s.[1]  Westbrae produces natural and vegetarian products, including soymilk under the WestSoy® brand.  WestSoy soymilk is sold in several varieties, including Organic Unsweetened Soymilk, which comes in regular (no flavor specified) and Vanilla varieties.  This case concerns WestSoy Organic Unsweetened Vanilla Soymilk (the "Product") which is differentiated from other WestSoy soymilks by being certified USDA organic, and having no added sugar.  Soy has a slightly astringent taste relative to the dairy milks with which Americans are more accustomed, and as an alternative to sweetening, soymilk

23
24

---

[1] W. Shurtleff & A. Aoyagi, HISTORY OF SOYMILK AND OTHER NON-DAIRY MILKS (1226 TO 2013) (Soyinfo Center 2013).

25

producers often flavor their products lightly with vanilla.  The result is not a strong vanilla flavor, but a hint of vanilla to balance the product's overall taste.  As the Product's web page states, it "is made from whole organic soybeans and a touch of natural vanilla."[2]

Developing the taste profile of a packaged food, such as the Product, often entails the selection and combination of a variety of flavor and non-flavor ingredients that will produce a distinctive, satisfying, consistent, and affordable product that will delight consumers.  Plaintiff's main argument, that flavoring a non-dairy milk with a flavor such as vanilla should be as simple as adding vanilla extract to the unsweetened version, is too simplistic a caricature of the food product development process to be believed by reasonable consumers.  Adding layers of flavors, such as other natural flavors, results in a robust, well-rounded flavored non-dairy milk alternative that some customers prefer over other brands.  To this end, many producers flavor their vanilla soymilk not just with vanilla extract, but with a package of flavorings of which vanilla extract is an important, but not the only, flavoring component.  These flavoring packages are carefully developed by specialized flavor suppliers, with their proprietary formulations kept as a trade secret.  Generically, these packages are termed "vanilla with other natural flavors, or "vanilla WONF."  Most, and sometimes all, of the secondary flavorings included in these flavor packages do not taste of vanilla, but contribute additional flavor dimensions to the finished product. Developing these sensory profiles is a whole branch of applied science, whose practitioners gives names to characteristics such as roundness, smoothness, creaminess, nuttiness, and others, that contribute to a soymilk with a rich, complex, and differentiated flavor profile.

Another important purpose of multiple flavor ingredients is often to provide consistency in the product's taste.  Consumers want not only a great tasting soymilk; they also want their

---

[2] http://www.westsoymilk.com/products/organic-unsweetened/organic-unsweetened-vanilla/.

current carton to taste just like the previous ones.  The inclusion of such flavors does not mean that there is not enough vanilla extract to supply the vanilla taste of the final product, or that the soymilk would not still have that "touch" of vanilla if the other natural flavors were removed.  It simply helps produce a satisfying, consistent, high-quality product.

For products that incorporate a vanilla WONF package, the flavor supplier, without disclosing its exact ingredients, certifies that the flavoring meets any requirements set by the soymilk producer, such as being all-natural, organic, and so forth, as well as providing guidance on the declaration of the flavoring in the ingredient statement.  The soymilk producer creates labeling for the soymilk that meets the requirements of the Food, Drug & Cosmetic Act and also is truthful and transparent to consumers.

Plaintiff contends that the vanilla flavor in WestSoy soymilk does not all come from natural vanilla flavor, but rather that most of it comes from artificial flavors.  Nothing on the Product's packaging or labeling gives Plaintiff any valid basis for this claim. [3]  The ingredient statement clearly lists "natural vanilla flavor" and "other natural flavors."  The Product is USDA certified Organic, which means that all ingredients (with a few exceptions not relevant here) must be not only natural, but organically derived.  Plaintiff does not dispute the Product's organic status, yet his allegations of artificial ingredients about its ingredients are inconsistent with its organic status, and he fails to reconcile this.  These indicators on the Product package should have alerted Plaintiff that his suspicions are not only unfounded, but implausible.

---

[3] Per the Court's Order (Dkt. 33 at 4), Defendant moved for and the Court granted judicial notice of the Product's full label.

## ARGUMENT

### I.   The Product's Labeling Complies with Applicable Regulations

The labeling of Defendant's Product is governed by the federal Food, Drug, and Cosmetic Act, which expressly preempts any provision of state law that is not identical to federal law.  21 U.S.C. § 343-1(a)(3).  As relevant to this case, the FDA's regulations implementing the FDCA expressly permit food manufacturers to describe a food's flavor on its label.  The FDA defines "flavor" as any ingredient "whose significant function in food is flavoring rather than nutritional," 21 C.F.R. § 101.22(a)(3), and which is used "to impart or help impart a taste or aroma in food," 21 C.F.R. § 170.3(o)(12).  If a "food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor," the only requirement is that the name of the food be "accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla….'" 21 C.F.R. § 101.22(i)(1).

Here, Plaintiff alleges that the "vanilla" statement on the Product misleads consumers to believe that "the origin of the Product's vanilla flavor 'comes exclusively from ingredients derived from the vanilla plant…'" (SAC ¶2).  Plaintiff contends that the "vanilla" in the Product name must be the common name of the ingredient that provides the vanilla flavor in the soymilk, as provided in the specific regulations for vanilla flavoring products, as if the soymilk were being marketed as a vial of vanilla extract.  According to Plaintiff, if the ingredient(s) providing the vanilla flavor is anything other than vanilla extract, this word may not be merely "vanilla," or else the product is misbranded.  This is wrong.

Under the applicable regulations, the portion of the Product name that is subject to an FDA standard of identity is "soymilk," whose accuracy is undisputed.  "Vanilla," a flavoring, is an optional word in the Product name.  Under 21 U.S.C. § 343(g), a food for which there is a standard of identity must bear on its label "the name of the food specified in the definition and

standard, and, insofar as may be required by such regulations, the common names of optional

ingredients (*other than spices, flavoring, and coloring*) present in such food" (emphasis added).

The FDCA thus specifically exempts the name of a flavoring, when included in the name of a

food, from having to comply with the standard of identity or common-name rules that would

apply if it were an ordinary ingredient.

The vanilla standards of identity Plaintiff cites, 21 C.F.R. § 169.180-169.182 (SAC ¶ 30),

are inapplicable as applied to a vanilla soymilk product.  Such regulations might apply to a

product such as the vanilla extract available on grocery store spice racks, but because of 21

C.F.R. § 101.22(h)(1), not to the listing of vanilla as a flavoring in another food, such as soymilk.

Here, the Product is named WestSoy Organic Unsweetened Vanilla Soymilk, so "vanilla" is the

characterizing flavor.  The proper application of the relevant regulations destroys Plaintiff's

claims because the general flavor regulations override the specific vanilla standards cited by

Plaintiff when vanilla is used as a *flavoring*, as opposed to being the key ingredient in a stand-

alone product, such as in the case of a bottle of vanilla extract in the "Baking Needs" aisle.

Thus, if, as is the case here, a "food contains no artificial flavor which simulates, resembles or

reinforces the characterizing flavor," the only requirement is that the name of the food on the

principal display panel or panels of the label be "accompanied by the common or usual name of

the characterizing flavor, e.g., 'vanilla.…'". 21 C.F.R. § 101.22(i)(1).  Westbrae's Product does

just that.  The food regulations recognize what Plaintiff refuses to acknowledge: flavor

designators are not ingredient claims and are treated differently because their purpose is to

communicate what the product will *taste* like.  Plaintiff does not dispute that the Product tastes of

vanilla.  Under the regulations, the Product is properly labeled.

The Product's ingredient statement also provides further evidence that the Product is properly labeled. [4]  According to the Product's ingredient declaration, the Product contains "natural vanilla flavor with other natural flavors."  The term "natural flavor'. . . means the essential oil, oleoresin, essence or extractive … distillate … which contains the flavoring constitutent derived from a spice … bark, bud, root, leaf or similar plant material … or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.  21 C.F.R. § 101.22(a)(3).  Any "[s]pice, natural flavor, and artificial flavor may be declared as 'spice,' 'natural flavor,' or 'artificial flavor…'" in the statement of ingredients of a food to which it is added.  21 C.F.R. § 101.22(h)(1).  The "natural flavor" regulation allows use of "natural flavor" to describe vanilla extract and other naturally derived flavorings, and Westbrae's identification of "natural vanilla flavor with other natural flavors" on its Product's statement of ingredients is consistent with the controlling regulations regardless of the botanical sources of those flavors.  The Product's ingredient statement is properly constructed and provides information to consumers that all vanilla flavor in the Product is natural flavor, as is also indicated by the USDA organic certification on the front of the package.  To the extent Plaintiffs attempt to argue that the identification of "natural flavor" and not "vanilla extract" in the ingredient statement implies that the Product is flavored with non-vanilla flavors, such an argument was rejected as a matter of law by the Southern District of California in *Zaback v. Kellogg Sales Co.* because it "misstates the law with respect to the listing of 'natural flavors' on an ingredient statement."  2020 U.S. Dist. LEXIS (S.D. Cal. June 22, 2020) (dismissing similar claims).

---

[4]  Per the Court's Order (Dkt. 33 at 4), Defendant moved for and the Court granted judicial notice of the Product's full label.  Defendant again respectfully requests that the Court do so in connection with this motion, referring to Dkt. 24-1.

The standards set by Plaintiff do not apply to the listing of vanilla as flavoring in another food, as is the case with the Product here.  The regulations Plaintiff bases his claims upon apply to stand-alone vanilla products such as vanilla or vanilla extract alone, where the purpose of the product is to be incorporated into other food products.  The Product at issue here is not vanilla or vanilla extract, the Product is vanilla flavored soymilk.  Furthermore, while there is no standard of identity for soymilk, the analogous one for milk provides that "each of the ingredients used shall be declared on the label as required by the applicable sections of parts 101 and 130 of this chapter." 21 C.F.R. § 101.4(b).  This explicitly adopts the aforementioned regulation, 21 C.F.R. § 101.22(a)(3) (and other parts of section 101.22), making it clear that the vanilla standards Plaintiff cites do not take precedence over the general flavor regulations in section 101.22 discussed above.  21 C.F.R. § 101.22(a)(3) is conclusive on this point, and any flavor derived from the vanilla plant (regardless of whether it meets the standard of identity for vanilla extract or not) can be labeled as a "natural flavor."

Plaintiff's entire basis for his contention that Westbrae's labeling violates 21 C.F.R. § 101.22, and the only basis alleged with the requisite specificity for any violation of the FDCA and its regulations, is stated in Paragraphs 55 and 56 of the SAC.  Plaintiff pins his entire argument on the contention that "the Product contains added vanillin, which must be labeled 'artificial' under 21 C.F.R. § 169, and maltol, which is a 'synthetic flavoring substance' under 21 C.F.R. § 172.515(b)."  Both of these contentions are wrong as a matter of law, as held in a Southern District of New York case, decided after this Court's dismissal of the First Amended Complaint, making identical claims as to the identical Product here.

Maltol is not necessarily an artificial flavor, and Plaintiff provides no basis to allege that artificial maltol is used in the Product.  Contrary to Plaintiff's assertion, 21 C.F.R. § 172.515(b)

1    does not declare the substances enumerated therein always to be synthetic.  That is neither the

2    meaning nor the purpose of that regulation.  Plaintiff's counsel attempted the same argument in

3    *Barreto v. Westbrae Natural*, their substantially identical case against this same Product in the

4    Southern District of New York.  In dismissing that case, the Court in *Barreto* easily saw through

5    the present argument, noting that other FDA regulations clarify that "the definition of artificial

6    flavor in turn 'includes the substances listed in §§ 172.515(b) … *except where these are derived*

7    *from natural sources*.'"  *Barreto*, 2021 U.S. Dist. LEXIS 3436, at *10, quoting 21 C.F.R.

8    § 101.22(a)(1) (emphasis added).  The *Barreto* Court took notice of common dictionaries whose

9    definitions establish that maltol "occur[s] in larch bark, chicory, and in roasted malt" and thus

10   can be naturally derived.  *Id.* and n.3, quoting *Oxford English Dictionary*, Oxford,

11   https://premium.oxforddictionaries.com/us/definition/american_english/maltol and *Merriam-*

12   *Webster.com Dictionary*, Merriam-Webster, https://www.merriam-

13   webster.com/dictionary/maltol.  There is no allegation in the SAC that the maltol allegedly used

14   in the Product was artificially and not naturally derived, nor that Plaintiff's laboratory analysis

15   could distinguish between the two.  Plaintiff therefore fails to allege adequately that Westbrae is

16   required to label its flavoring as "artificial" under 21 C.F.R. § 101.22(i) because of the alleged

17   presence of maltol.

18          As the *Barreto* Court also recognized, the same is true of vanillin, except that Plaintiff

19   has even less basis to allege that vanillin is necessarily an artificial flavor.  Here, Plaintiff's basis

20   is 21 C.F.R. § 169.180.  But, as noted above, 21 C.F.R. § 169.180 applies only to a standard-of-

21   identity vanilla-vanillin extract sold as such, not to a food flavored with vanilla and/or vanillin.

22   In the context of the sale of a stand-alone vanilla flavoring, such as those that might be found in a

23   supermarket Baking Needs aisle, 21 C.F.R. § 169.180 puts forth a special definition of

24

25

"artificial" that differs from the usual meaning of that word as used in 21 C.F.R. § 101.22(i) and elsewhere in FDA regulations.  The fact that 21 C.F.R. § 169.180 pertains only to stand-alone vanilla flavoring products is shown by the fact that the same paragraph also requires disclosure of the strength, or "fold," of the vanilla in the extract as part of the product's name, something that not even Plaintiff contends is expected or required on a vanilla flavored food such as the Product.  The purpose of 21 C.F.R. § 169.180 is explicitly to police the labeling of stand-alone "standard of identity" vanilla flavorings.  The Product at issue here is not a standard-of-identity vanilla flavoring, nor is it even alleged to contain one.  It is a soymilk.  The word "artificial" in 21 C.F.R. § 101.22(i) must be read as it is understood throughout the rest of the FDA regulations, as meaning not "derived from natural sources."  21 C.F.R. § 101.22(a)(1).  There is no dispute that vanillin can be derived from natural sources.  The *Barreto* Court, recognizing all of this, noted that the plaintiff in that case, like the one here, did not allege that the vanillin used in the Product is synthetically derived, nor did she allege that her laboratory analysis could tell whether it is or not.  *Barreto* at *9-10.

All of Plaintiff's other arguments that Westbrae's labeling is "unlawful" free-ride on Plaintiff's implausible allegations, already considered and rejected by this Court, that a "vanilla" flavor designator misleads consumers to believe that all of the flavoring in a soymilk must come from vanilla bean extract, and therefore violates general misbranding provisions.  Order, Dkt. 33, at 4-7.  These fail because Plaintiff's theory of actual deception fails.  Accordingly, Plaintiff cannot plausibly allege that the product is mislabeled, under the FDA regulations or the parallel provisions of California's Sherman Law, in any way.  Both the Product's use of "vanilla" on the front label and the use of "natural vanilla flavor with other natural flavors" in the ingredient list

are fully compliant with the applicable regulations and consistent with a product flavored by

vanilla extract, alone or in combination with other natural flavors.

## II.     Plaintiff's Claims Are Preempted Because They Seek to Impose Additional Requirements Beyond Federal Food Labeling Regulation

As set forth above, the Product fully complies with federal food regulations.  It thus

follows that when Plaintiff attempts to impose additional requirements inconsistent with FDCA

regulations, such impositions are not permitted and his claims are preempted.  Consumer

protection laws are preempted when they are used to impose requirements that contravene or are

inconsistent with the FDCA's requirements.  *See Durnford v. MusclePharm Corp.,* 907 F.3d 595,

601-03 (9th Cir. 2018) (finding express preemption where the defendant's uses of the terms at

issue on the products were in compliance with FDA regulations); *Red v. The Kroger Co.,* No. 10-

1025, 2010 U.S. Dist. LEXIS 115238, *19-22 (C.D. Cal. Sept. 2, 2010) (same); *Gitson v. Trader

Joe's Co.*, No. 13-cv-01333-WHO, 2014 U.S. Dist. LEXIS 33936, at *41 (N.D. Cal. Mar. 14,

2014) ("[P]laintiffs may not attempt to impose labeling requirements that go beyond those set

forth in the FDCA and FDA regulation"); *see also Peviani v. Hostess Brands, Inc.,* 750 F. Supp.

2d 1111, 1118 (C.D. Cal. 2010) ("[c]onsumer protection laws, such as the UCL, FAL, and

[CLRA] are . . . preempted if they seek to impose requirements that contravene the requirements

set forth by federal law."); *Meaunrit v. ConAgra Foods Inc.,* No. 09-2220, 2010 WL 2867393, at

*5-6 (N.D. Cal. July 20, 2010) (holding that common law claims were preempted to the extent

they sought "to impose different requirements on labeling" than those imposed by federal law).

Since the Product's labeling is in compliance with federal law, a judgment in Plaintiff's

favor would impose different or additional requirements than those of the FDCA, and thus,

express preemption applies.  *See Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1102-03

(N.D. Cal. 2012) (finding express preemption where the defendant's uses of the terms at issue on

the products were in compliance with FDA regulations); *Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1118-23 (N.D. Cal. 2010) (similar); *Peviani v. Hostess Brands, Inc.,* 750 F. Supp. 2d 1111, 1119-20 (C.D. Cal. 2010) (similar).

### III.    No Reasonable Consumer Would Understand the Product's Packaging to Represent that the Product Contained Vanilla Solely from Vanilla Beans

#### A.    Even When Pleading Under the "Unlawful" Prong, Plaintiff Must Still Plead Plausibly that Reasonable Consumers Are Deceived

As a threshold issue, even if Plaintiff plausibly pleads that the Product's labels do not comply with FDA regulations, this supplies only one element of Plaintiff's cause of action under the unlawful prong.  Plaintiff must still plead that he, and members of the purported class, *reasonably* relied on the purported misrepresentations to their detriment, and were injured thereby.  *See Kwikset Corp. v. Superior Court of Orange County*, 51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011) (emphasis added).  Further, Plaintiff may not bootstrap alleged regulatory violations to satisfy these elements by pleading that Plaintiff relied on the Product being labeled in accordance with law or "legal for sale."  *Bush v. Mondelez International, Inc.*, No. 16-cv-02460-RS, 2016 U.S. Dist. LEXIS 174391, at *9-10 (N.D. Cal. Dec. 16, 2016).

This case is much like *Bush v. Mondelez*, 2016 U.S. Dist. LEXIS 174391 where the plaintiff alleged that the defendant underfilled the containers of travel-size cookie products in violation of the FDCA, 21 U.S.C. § 343(q), as incorporated by reference in the Sherman Law. Like the Plaintiff here, the *Bush* plaintiff wanted to go directly from pleading a regulatory violation to the collection of damages.  The court rejected the theory that an alleged regulatory violation is sufficient to state a UCL claim.  These are claims brought under California consumer laws, and courts, not the FDA, determine whether a product is misleading under those laws."  *Id.* at *7-8, *citing Ebner v. Fresh, Inc.*, 838 F. 3d 958 (9th Cir. 2016).  Whether it complies with

food regulations or not, even when asserted under the "unlawful" prong of the UCL, the labeling

challenged by the Plaintiff must be independently assessed under the deception standard to

determine whether reasonable consumers would have relied on it to their detriment.  *Id.* (holding

that in this determination, a court should not be "influenced by, or even consider[], the existence

of any FDA regulations (or the lack thereof)").

Under all of Plaintiff's causes of action, therefore, he faces the same burden.  He must

plausibly allege that reasonable consumers, acting reasonably in the circumstances, will be

misled by the challenged labeling.  As discussed below, Plaintiff fails yet again to do so.

### B.  Plaintiff Has Not Plausibly Pled that Reasonable Consumers Are Deceived

Under California's UCL, FAL, and CLRA, "conduct is deemed deceptive or misleading

if the conduct is likely to deceive a reasonable consumer."  *In re Sony Gaming Networks &*

*Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942, 989 (S.D. Cal. 2014); *see also Freeman*

*v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995).  As the Ninth Circuit recently explained, "the

reasonable consumer standard requires a probability that 'a significant portion of the general

consuming public or of targeted consumers, acting reasonably in the circumstances, could be

misled.'" *Becerra v. Dr. Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1228-29 (9th Cir. 2019) (quoting

*Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486, 495 (2003)).

Here, Plaintiff's factual allegations about Defendant's conduct and the contents of WestSoy

Organic Unsweetened Vanilla Soymilk are based on unfounded speculation about the meaning of

its label, and it is not enough to allege the "mere possibility that the advertisement might

conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."

*Lavie*, 105 Cal. App. 4th at 508; *see also Hill v. Roll Int'l Corp*., 195 Cal. App. 4th 1295, 1304,

128 Cal. Rptr. 109, 115 (2011) (emphasizing that "the standard is not a least sophisticated

1  consumer," but a reasonable one); *Clark v. Westbrae Nat., Inc.,* No. 20-cv-03221-JSC, 2020 U.S.

2  Dist. LEXIS 224966, at *7 (N.D. Cal. Dec. 1, 2020) (quoting *Lavie*).

3        The Product's label is clear.  Plaintiff here takes great liberties in interpreting the label to

4  fit his claims.  But the references to "vanilla" on the Product suggest that the Product is vanilla

5  flavored, and no reasonable consumer would believe, from the label on the Product and its

6  ingredient statement, that the vanilla flavoring in the product is derived exclusively from vanilla

7  beans.  Recently, in an identical case against Defendant brought by the same counsel regarding

8  the same Product, Judge P. Kevin Castel confirmed that neither the "vanilla" flavor designator on

9  the product nor the ingredient panel suggested that the predominant source of vanilla flavor was

10  vanilla from vanilla beans, and that "[a] reasonable consumer would not draw a conclusion as to

11  the quantity or predominance of the natural flavor so long as some of the vanilla flavor was

12  derived from natural vanilla and the balance from other natural flavors."  *Barreto*, 2021 U.S.

13  Dist. LEXIS 3436, at *1.  The *Barreto* decision followed precedent from District Courts having

14  repeatedly rejected the same theories brought by the same plaintiffs' counsel on the grounds that

15  a reasonable consumer understands "vanilla," without any other representation, to refer to

16  flavoring and not the vanilla plant as an ingredient.  *See Twohig v. Shop-Rite Supermarkets, Inc.*,

17  2021 U.S. Dist. LEXIS 26489, at *_ (S.D.N.Y. Feb. 11, 2021) (dismissing identical allegations

18  as to another vanilla soymilk, holding "a reasonable consumer would understand that 'vanilla' is

19  merely a flavor designator, not an ingredient claim"; *Cosgrove v. Blue Diamond Growers,* 2020

20  U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020) (dismissing case and finding that the Product

21  is not misleading because a reasonable consumer would associate the representation of 'Vanilla'

22  to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient); *Pichardo v. Only*

23  *What You Need, Inc.,* No. 20-cv-493 (VEC), 2020 U.S. Dist. LEXIS 199791, at *5 & 10

24

25

(S.D.N.Y October 27, 2020) (finding that a drink labeled "Smooth Vanilla," that does not state that it is "made with vanilla extract" or even contain the words "vanilla extract," would not mislead a reasonable consumer to believe that all (or even most) of the vanilla taste comes from vanilla extract, "nor does the use of the term vanilla imply that there are no other flavoring ingredients") ; *Steele v. Wegmans,* No. 1:19-cv-09227 (LLS), 2020 U.S. Dist. LEXIS 123637 (S.D.N.Y. July 14, 2020) (dismissing case substantially identical to this one, alleging misleading "vanilla" flavor designator on ice cream). The references to vanilla on the Product's packaging would not lead reasonable consumers to believe that the vanilla flavoring is solely derived from vanilla beans. The consumer is not looking for a bowl of vanilla or a bottle of vanilla extract. The product the consumer wishes to purchase is soymilk and the flavor designator "vanilla" indicates that the soymilk tastes of vanilla, rather than another flavor such as chocolate, strawberry, etc. "That association, of 'Vanilla' as a flavor and not an ingredient, is borne out by consumers' practical use of the representation. For example, here, the consumer in the grocery store is looking, first and foremost, for [soy] milk – not vanilla. The large font "Vanilla" on the front of the Product allows the consumer to quickly understand the flavor of the [soy] milk and differentiate between the products." *Cosgrove v. Blue Diamond Growers,* 2020 U.S. Dist. LEXIS 229294, at *7.

Another court considered the same theory advanced by Plaintiff here, but as applied to vanilla labeling on granola bars. It, too, was dismissed because the plaintiff failed to allege either a violation of regulations or a plausible deception. In *Zaback v. Kellogg Sales Co.*, the plaintiff alleged that the name of Kellogg's Bear Naked Granola V'nilla Almond bars implied that the bars were flavored "with vanilla flavoring derived exclusively from vanilla beans," exactly as Plaintiff does here. No. 3:20-cv-00268-BEN-MSB, 2020 U.S. Dist. LEXIS 109449

(S.D. Cal. June 22, 2020).  Also as here, Plaintiff relied on extravagant inferences from the

listing of "natural flavors" in the ingredient statement to allege that the product was not, in fact,

flavored exclusively with vanilla from vanilla beans.  The court held that a Complaint "which

provides no factual basis for this argument other than the lack of vanilla's inclusion on the

ingredients list" does not plausibly allege anything about the ingredients that would render the

labeling deceptive.  The court also held, that because 21 C.F.R. § 101.22(a)(3) and other

regulations permit natural flavors, including vanilla, to be labeled in the way Kellogg did, "the

Complaint, as pleaded, does not allege a violation of these regulations and thus fails to state a

claim pursuant to the underlying California causes of action."  *Zaback,* 2020 U.S. Dist. LEXIS

109449, at *8.  The same conclusion should apply here.

### C.  Plaintiff's Laboratory Analysis Is Worthless

Plaintiff continues to rely on the same mass spectrometry laboratory analysis his counsel

proffered in *Barreto* to support his claims that the label is misleading.  However, the *Barreto*

court found that the "analysis on which the Complaint heavily relies does not state or otherwise

plausibly support the conclusion that the added vanillin comes from artificial rather than natural

sources … [t]he results of the GS-MS analysis list the detected ingredients as including 'vanillin'

but it does not purport to identify the source of vanillin as natural or artificial.  Westbrae's

ingredient list states that its 'Vanilla Soymilk' contains 'other natural flavors.' [Plaintiff] does

not plausibly allege that the added vanillin detected by the GS-MS analysis was derived from

artificial rather than natural sources."  *Barreto,* U.S. Dist. LEXIS 3436, at *9-10.

Plaintiff also alleges, as did the *Barreto* plaintiff, that the lab analysis detected the

substance maltol, and that because maltol is an artificial substance, the Product's label is

misleading.  (SAC ¶¶ 27-29, 31, 33).  The same far-fetched interpretation of the lab analysis was

rejected in *Barreto* because "although the GS-MS analysis detected maltol, it contain[ed] no

finding whether the maltol was derived artificially or naturally." *Barreto* at *10.  Further,

"…according to common dictionaries, maltol is '[a] derivative of pyran occurring in larch bark,

chicory, and in roasted malt, and used as a flavoring agent…" and is in fact, a natural flavor.

*Barreto* at *10.[5]  Plaintiff's laboratory analysis provides no basis to allege that the maltol used in

the Product, if any, is artificial maltol.  Plaintiff is left without any basis to allege that maltol in

the product is anything other than an additional natural flavor that does not characterize vanilla,

*i.e.*, an "other natural flavor" and not an artificial flavor nor a vanilla flavoring of any kind.

### D.  Plaintiff's Consumer Survey Is Fatally Flawed and Cannot Save His Deficient Claims

The Second Amended Complaint provides additional detail about a purported consumer

survey that was only alluded to in the First Amended Complaint, or perhaps a new survey

conducted since that complaint was dismissed, in an attempt to convince the Court that Plaintiff

has a factual basis to claim that consumers are misled by the "vanilla" flavor designation on the

Product.  What these details show, however, is that the survey is not a competent survey, but a

pseudo-survey contrived to arrive at the Plaintiff's preconceived answers and lend a false aura of

science to Plaintiff's implausible allegations.  Just from the limited details provided, the

following biasing elements of the pseudo-survey are clear:

No Appropriate Filter Question.  Before asking consumers what message they received

about the source of the Product's vanilla flavor, a competent survey would first have asked

respondents if the packaging communicates the source of the vanilla flavor.  Plaintiff's "survey"

---

[5]   In confirming this claim, the *Barreto* Court cites to  "Oxford English Dictionary, Oxford, https://premium.oxforddictionaries.com/us/definition/american_english/maltol maltol (last accessed Jan. 7, 2021); Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/maltol (last accessed Jan. 7, 2021) (defining maltol as "a crystalline compound $C_6H_6O_3$ derived from gamma-pyrone, found especially in pine needles, larch bark, and chicory, and formed when streptomycin is hydrolyzed and when barley and other grains are roasted.")."  Barreto v. Westbrae, 2021 U.S. Dist. LEXIS, n. 3.

1   failed to do this.  It asked, "Does the term 'Vanilla' on the above pictured product convey to you

2   that there are one or more added ingredients in the product that give it vanilla flavor?"  Dkt. 35-1

3   at 5.  The answer to this is, of course, "yes;" the vanilla flavor must come from something.  But

4   the survey never asks respondents whether the Product conveys what those ingredients are or

5   where they come from.  Thus, it never filters out respondents who accurately observe that the

6   "vanilla" designator says nothing about the source of the vanilla flavor.

7       Leading Key Question and Answer Alternatives.  Having failed to filter out respondents

8   who perceive that nothing about the source of the Product's vanilla flavor is communicated by

9   the packaging, the survey then affirmatively tells respondents that the packaging *does*

10  communicate something about the source of the packaging through the biased wording of its key

11  question:  "What does the term 'Vanilla' on the above pictured product convey to you about the

12  origin of the vanilla flavor?"  *Id.* at 6.  The question does not ask "What, if anything …" or

13  provide any other way for respondents to interpret it as meaning anything other than that the

14  package conveys something about the source of the vanilla flavoring which they are supposed to

15  perceive.  This is followed by a highly biased presentation of response alternatives in which the

16  correct answer – "None of these" – is the desultory final choice, much shorter and less detailed

17  than any of the other alternatives, cueing respondents that they should only select this answer if

18  they are not perceptive or attentive enough to pick up the message that the researcher wants them

19  to.  Competent survey questions must be non-leading, and response choices must be similar in

20  length and detail, so that they all appear to respondents as equally legitimate.  *Proctor & Gamble

21  v. Ultreo, Inc.,* 574 F. Supp. 2d 339, 352 (S.D.N.Y. 2008) ("A survey is not credible if it relies on

22  leading questions which are inherently suggestive and invite guessing by those who did not get

23  any clear message at all."), citing *Johnson & Johnson-Merck Consumer Pharms. Co.*, 19 F.3d

25

125, 134 (3d Cir. 1994) and *Proctor & Gamble v. Hoffmann-La Roche,* 2006 U.S. Dist. LEXIS 64363, at *86 (S.D.N.Y. Sept. 6, 2006).  The order of response options also must be randomized, as the first-presented answer will tend to attract more responses, in a well-documented "order bias."  *See Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1275 (S.D.N.Y.  1994).  It is not clear whether the order of Plaintiff's first four responses was rotated, but the correct "None of these" choice – given its wording, which inappropriately refers to "these" other responses, and cannot stand as an independent response –would make no sense unless it comes last, so presumably it always was dumped at the end.

Lack of Control Condition.  The impact of some of the above biasing artifacts could be at least roughly estimated if half of the respondents had been presented with a control stimulus, i.e., the Product altered so as to remove the deception that Plaintiffs allege.  In a competent consumer survey for litigation, such a control condition is almost always used, and the extent of deception attributed to the challenged messaging is the number of consumers found to be deceived by the actual package, minus the number that receive the same allegedly misleading message from the innocuous control packaging – often termed the "net" or "net of noise" percentage of consumers allegedly deceived.  The control condition isolates the effects of context and preexisting beliefs, as well as survey artifacts, from messages conveyed by challenged elements of the packaging.  Plaintiff used no control condition, and therefore cannot attribute any purported interpretations about the source of the Product's vanilla flavor to the challenged elements of the Product's label.  Surveys have been rejected on *Daubert* grounds for this single fault alone.  *See Procter & Gamble Pharm., Inc. v. Hoffman-LaRoche, Inc.*, 2006 U.S. Dist. LEXIS 64363 at *25 (S.D.N.Y. 2006); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 351-52 (S.D.N.Y. 2008) ("without a control, one cannot rely on the results of the study for any purpose"); *Pharmacia*

*Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 601 (D.N.J. 2003) ("Controls are an essential feature of reliable survey evidence because they enable the surveyor to separate the wheat (the effect of the advertisement, alone, on the participant) from the chaff (the effect of the participant's prior knowledge and/or prior (mis) conceptions)."); *see generally S.S. Diamond, Control Foundations:Rationales and Approaches*, S.S. Diamond & J.B. Swann (eds.), TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS: LAW, SCIENCE, AND DESIGN (ABA 2012) at 202 (discussing control groups as "crucial elements" of consumer surveys in trademark and advertising litigation).

Plaintiff's entire "survey" is thus clumsily, but effectively, designed to discourage the correct response and make respondents feel that they are dummies if they cannot discern the hidden meaning on the Product's label that Plaintiff obviously wants to them to find, and clearly spells out for them. Most of the things that can be done in a survey to bias the results and to activate "demand effects" – i.e., respondents answering in ways that they perceive the researcher would like them to – were clearly done here, even based on just the limited amount of detail that Plaintiff provides. The Court should accord Plaintiff's result-driven pseudo-survey no more weight than Plaintiff's baseless and implausible allegations about consumer deception.

In any event, surveys cannot shift the prevailing reasonable understanding of what consumers understand words to mean, or salvage implausible allegations of consumer interpretations of labeling. *See Becerra v. Dr. Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1231 (9th Cir. 2019); *Yu v. Dr Pepper Snapple Group, Inc.*, No. 18-cv-6664, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020).

## IV. Plaintiff Lacks Standing to Seek Injunctive Relief

To have standing to seek injunctive relief, Plaintiff must demonstrate that he is "realistically threatened by a repetition of [the violation]." *Gest v. Bradbury,* 443 F.3d 1177,

1181 (9th Cir. 2006); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 11 (1983); *Chapman v. Pier 1 Impos. Inc.,* 631 F.3d 939, 946 (9th Cir. 2011). However, Plaintiff has made abundantly clear through the SAC that he is aware of the alleged other flavors in the Product. He is thus at no risk of future harm and therefore lacks standing to seek injunctive relief as courts have repeatedly found that a plaintiff's knowledge of allegedly unlawful or misleading conduct precludes standing for injunctive relief under Article III because the plaintiff cannot prove that he will, in the future, rely on the challenged statement to his detriment, even if he claims he would purchase the product again. *See Prescott v. Nestle USA, Inc.,* No. 19-cv-07471-BLF, 2020 U.S. Dist. LEXIS 99261 (N.D. Cal. June 4, 2020) (finding plaintiffs lacked standing to seek injunctive relief because "[n]ow that Plaintiffs know the Product does not contain white chocolate, it is difficult to ese how Plaintiffs could be misled into purchasing it in the future"); *accord Jackson v. General Mills, Inc.,* No. 18-cv-2634-LAB (BGS), 2019 U.S. Dist. LEXIS 162447, at *13 (S.D. Cal. Sept. 20, 2019); *Joslin v. Clif Bar & Co.,* No. 4:18-cv-04941-JSW, 2019 U.S. Dist. LEXIS 192100, at *12-13 (N.D. Cal. Aug. 26, 2019); *Rahman v. Mott's LLP*, No. 13-cv-3482 SI, 2014 U.S. Dist. LEXIS 147102, at *17 (N.D. Cal. Oct. 15, 2014); *Ham v. Hain Celestial Grp., Inc.,* 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014); *Garrison v. Whole Foods Mkt. Grp., Inc.,* No. 13-cv-05222-VC, 2014 U.S. Dist. LEXIS 75271 at *20 (N.D. Cal. Jun. 2, 2014).

Here, Plaintiff "could easily determine" whether the labeling has changed and he is in no danger of being misled. *See Cordes v. Boulder Brands USA, Inc.,* No. CV 18-6534 PSG (JCx), 2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018) (dismissing injunctive relief claim where plaintiff "could easily determine the number of pretzels in each bag before making a future purchase by simply reading the back panel"); *Rahman v. Mott's LLP,* No. 13-cv-03482-SI,

2018 U.S. Dist. LEXIS 164620 (N.D. Cal. Sep. 25, 2018) (granting summary judgment on an injunctive relief claim where there was no risk plaintiff would be misled by the "No Sugar Added" label since she now knew what it meant); *Fernandez v. Atkins Nutritionals, Inc.,* No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018) (dismissing injunctive relief claim where plaintiff "admits that she now has knowledge that enables her to make an appropriate choice" with respect to the challenged products).  Where a plaintiff's claims are based "entirely on a past transaction," and a plaintiff has knowledge of the alleged misconduct, courts have held that the plaintiff "as a matter of law, cannot establish that he is under any threat of suffering actual or imminent future harm" and his claims for injunctive relief fail.  *Campion v. Old Republic Home Protections Co.,* 861 F. Supp. 2d 1139, 1149-50 (S.D. Cal. 2012); *see also Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007).

Plaintiff's facile allegation that he "would purchase the Product again … if the Product were reformulated such that the vanilla flavor came exclusively from the vanilla plant or the Product was not deceptively labeled" (SAC ¶ 11) is nonsensical.  Plaintiff now knows, at least allegedly, the nature of the Product.  Plaintiff is in exactly the same position whether the labeling is accurate or is known by the Plaintiff to be inaccurate, and will either buy the Product based on its known, true characteristics or not.  There is no prospect of injury.  Plaintiff's injunctive relief claim must accordingly be dismissed.

## V.    Plaintiff's Claims for Restitution Should Be Dismissed

If Plaintiff's Second Amended Complaint is not dismissed completely, the Court should nonetheless dismiss Plaintiff's claims for restitution under the CLRA, UCL, FAL, and California common law.  As decided by the Ninth Circuit in *Sonner v. Premier Nutrition Corp.,* a plaintiff cannot seek restitution under these theories without establishing that he lacked an adequate

1  remedy at law.  962 F.3d 1072 (9th Cir. 2020).  Plaintiff does not make such claims in the SAC,

2  and "it is axiomatic that a court should determine the adequacy of a remedy in law before

3  resorting to equitable relief."  *Manning v. Gap Inc.,* 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017)

4  (quoting *Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60, 75-76 (1992)). Plaintiff may not

5  assert an unjust enrichment claim that is duplicative of his statutory claims. *Barocio v. Bank of*

6  *Am., N.A*., No. C 11-5636 SBA, 2012 U.S. Dist. LEXIS 128617 (N.D. Cal. Sep. 10, 2012);

7  *Lanovaz v. Twinings N. Am., Inc.,* No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612 (N.D.

8  Cal. Feb. 25, 2013).  Plaintiff's claim can only survive if Plaintiff has no adequate remedy at law,

9  which is not the case here.  *See Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 260 (2011)

10  (where CLRA, UCL and common law fraud claims were adequate, claim for restitution was

11  unnecessary); *Rhynes v. Stryker Corp.,* No. 10-5619 SC, 2011 U.S. Dist. LEXIS 58286 (N.D.

12  Cal. May 31, 2011) (equitable relief unavailable where there is an adequate remedy at law).

13  Plaintiff fails to allege he lacks an adequate remedy at law and pleads the opposite, for

14  compensatory damages based on a number of different claims, (SAC, Prayer for Relief) and also

15  seeks punitive damages. *Id*.  It follows that Plaintiff's claim for unjust enrichment should be

16  dismissed.

17  **VI.      The Second Amended Complaint Should Be Dismissed with Prejudice**

18  Despite the Court's allowance for Plaintiff amend his pleadings for the second time, the

19  SAC fails to remedy any of the defects the Court identified in its earlier Order dismissing the

20  First Amended Complaint.  The SAC simply relies on new variations of the same speculative

21  inferences this Court already considered and rejected.  Because no reasonable consumer could be

22  misled by the challenged labels and Plaintiff's complaint "could not possibly be cured by the

23  allegation of other facts," the SAC should be dismissed without leave to amend. *Ebner v. Fresh,*

24  *Inc.,* 838 F.3d 958, 968 (9th Cir. 2016); *see also Painter v. Blue Diamond Growers,* 757 F.

25

App'x 517, 520 (9th Cir. 2018) (denying leave to amend where no amendment "could improve

the plausibility of the consumer confusion allegations [plaintiff] asserts").  Plaintiff has now had

three opportunities to put forth a sufficient complaint.  It is clear that further opportunities to

amend would be an "exercise in futility," and such complaints should be dismissed with

prejudice and without leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("futility of

amendment" warrants denying leave to amend); *Manchouck v. Mondelez Int'l, Inc*., 2013 WL

5400285, *4 (N.D. Cal. Sept. 26, 2013), aff'd 603 F. App'x 632 (9th Cir. 2015).  *Nissan Motor

Co. v. Nissan Comput. Corp.,* 204 F.R.D. 460, 463 (C.D. Cal. 2001) (finding "leave to amend

should be granted where 'the allegation of other facts consistent with the challenged pleading

could not possibly cure the deficiency.'") (quoting *New Armour Pharm. Co.,* 67 F.3d 716, 722

(9th Cir. 1995)).

## CONCLUSION

For the reasons stated above, Defendant Westbrae Natural, Inc. respectfully requests that

the Court dismiss Plaintiff's Second Amended Complaint with prejudice and that it order such

further relief as is appropriate.

Dated: February 16, 2021                         Respectfully submitted,

                                                 */s/ August T. Horvath*
                                                 August T. Horvath (AH 8776)
                                                 *ahorvath@foleyhoag.com*
                                                 FOLEY HOAG LLP
                                                 1301 Sixth Avenue, 25th Floor
                                                 New York, New York 10019
                                                 Tel:  (646) 927-5500
                                                 Fax (646) 927-5599

                                                 *Attorneys for Defendant Westbrae Natural
                                                 Inc.*

1

**PROOF OF SERVICE**

2

I, Jennifer Yoo, hereby certify that on February 16, 2021, I caused the foregoing

3 document to be electronically filed with the Clerk of the Court for the United States District

4 Court, Northern District of California, by using the CM/ECF system and electronically served to

5 all counsel of record.  I declare under penalty of perjury under the laws of the United States that

6 the foregoing is true and correct.

7

8 Dated: February 16, 2021                                          /s/ *Jennifer Yoo*

Jennifer Yoo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24