UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD CLARK,<br><br>Plaintiff,<br><br>v.<br><br>WESTBRAE NATURAL, INC.,<br><br>Defendant. | Case No. 20-cv-03221-JSC<br><br>**ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 38 |

The pending motion to dismiss asks whether Plaintiff has plausibly alleged that a label describing soy milk as "vanilla" soymilk misrepresents to reasonable consumers that the product's vanilla flavor is derived *exclusively* from the vanilla bean plant.[1]  The Court previously granted Defendant's motion to dismiss Plaintiff's First Amended Complaint. (Dkt. No. 33.[2]) Defendant's motion to dismiss Plaintiff's Second Amended Complaint is now pending before the Court. (Dkt. No. 38.)  Having considered the parties' briefs and having had the benefit of oral argument on April 15, 2021, the Court GRANTS the motion to dismiss.  Plaintiff has failed to plausibly allege that a reasonable consumer would be misled by Defendant's label and has failed to state a claim under the UCL's unlawful prong.

**BACKGROUND**

This action challenges Defendant's labeling of the Product pictured below:

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 6, 14.)
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.



(Second Amended Complaint (SAC), Dkt. No. 35 at ¶ 1.) Plaintiff alleges that he relied upon the "Vanilla" representation when he purchased the Product and that "[h]e believed that the vanilla flavor in the Product was exclusively from the vanilla plant." (*Id*. at ¶ 11.) However, "scientific testing of the Product on January 31, 2020 by the Mass Spectrometry Facility, Food Innovation Center North, revealed that the Product's vanilla flavor Product [sic] does not come exclusively from the vanilla plant." (*Id*. at ¶ 23.) The testing identified 35 flavor compounds including vanillin and maltol, which "are flavoring agents commonly added to food to simulate, resemble or reinforce the flavor notes and aromas of vanilla from the vanilla plant." (*Id.* at ¶¶ 25-28.)

Plaintiff alleges that "[h]e would not have purchased the Product at a premium price or bought the Product at all had Plaintiff known the truth." (*Id*.) Further, according to a 2020 consumer survey, "49.6% percent . . . believed that the term 'Vanilla' on the Product means that that the origin of the Product's vanilla flavor 'comes exclusively from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract.'" (*Id*. at ¶ 22.)

2

Plaintiff alleges that Defendant's labeling violates California's consumer protection laws including (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.* under the unlawful, unfair, and fraudulent prongs (claims 1 and 2); (2) California's false advertising law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* (claim 3); and (3) the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et. seq* (claim 4). He seeks damages, restitution, and an injunction to stop Defendant's allegedly false and misleading marketing practice regarding the Product. The Court previously granted Defendant's motion to dismiss for failure to state a claim. (Dkt. No. 33.) Plaintiff thereafter filed the now operative Second Amended Complaint and Defendant again moved to dismiss. (Dkt. Nos. 35, 38.)

**DISCUSSION**

The SAC repleads the same claims under California's consumer protection statutes as the First Amended Complaint. Defendant contends that Plaintiff's claims (1) fail the reasonable consumer test, (2) are preempted, (3) are barred because Plaintiff lacks standing to pursue injunctive relief, and (4) are barred because Plaintiff cannot seek restitution.

**A. Plaintiff's Deception Claims**

False advertising claims under the UCL, CLRA, and false advertising law are governed by the "reasonable consumer" standard. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A plaintiff must show that consumers are "likely to be deceived" by the challenged statements. *Id.* The Court previously held that Plaintiff had not alleged facts that plausibly supported an inference that a reasonable consumer would interpret "vanilla" on the Product's label to mean that the Product's flavor is derived exclusively from the vanilla bean. The Court also concluded that "Plaintiff's barebones allegation regarding the results of a 2020 survey which allegedly showed that 69.5% of 400 consumers believed that 'the 'Vanilla' representation on the Product meant that the Product's flavor comes exclusively from the vanilla bean' (*see* FAC ¶ 2), does not push Plaintiff's reasonable consumer allegation over the plausibility line." (Dkt. No. 33 at 6.) Plaintiff's SAC fares no better.

First, as this Court and numerous other courts considering challenges to the use of the word "vanilla" in food descriptions have held, there is nothing about the word "vanilla" itself

3

which suggests to the reasonable consumer that the flavor comes *exclusively* from the vanilla bean. *See, e.g., Twohig v. Shop-Rite Supermarkets, Inc*., No. 20-CV-763 (CS), 2021 WL 518021, at *3 (S.D.N.Y. Feb. 11, 2021) (concluding on a motion to dismiss that a reasonable consumer "would understand that 'vanilla' is merely a flavor designator, not an ingredient claim" and collecting S.D.N.Y. cases regarding the same); *Harris v. McDonalds*, No. 20-cv-06533-RS Dkt. No. 40. (N.D. Cal. Mar. 24, 2021) (finding that plaintiff had failed to plausibly allege that a reasonable consumer would be misled by McDonald's labeling of its ice cream as "Vanilla" or "Vanilla Cone" without qualification).

Second, there is nothing about the Product's label which would prompt a reasonable consumer to conclude otherwise. The label just includes the word "Vanilla"; it does not include the words "Made with Aged Vanilla," *see Dailey v. A&W Concentrate Co*., No. 20-CV-02732-JST, 2021 WL 777114, at *1 (N.D. Cal. Feb. 16, 2021); *see also Mantikas v. Kellogg Co*., 910 F.3d 633, 638 (2d Cir. 2018) (plaintiffs plausibly alleged consumers would believe Cheez-it crackers were made predominantly with whole grain where label stated "made with whole grain"); nor does it include any vignettes or images of a vanilla plant or bean, *see Budhani v. Monster Energy Company*, No. 20-CV-1409 (LJL), 2021 WL 1104988, at *4 (S.D.N.Y. Mar. 22, 2021); *see also Williams*, 552 F.3d at 939 (holding that a reasonable consumer could interpret a "fruit juice snack" product with a label picturing different fruits to mean that the product contains the pictured fruits).

Third, the results of a consumer survey allegedly completed on December 11, 2020 do not save Plaintiff's deception claims. (SAC at ¶ 20, Ex. A.) Plaintiff alleges that 403 individuals were shown a picture of the Product and asked: "What does the term 'Vanilla' on the above pictured product convey to you about the origin of the vanilla flavor?" The consumers were given multiple choice responses, and 49.6% of the consumers surveyed selected the response that they "believed that the term 'Vanilla' on the Product means that that the origin of the Product's vanilla flavor 'comes exclusively from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract.'" (*Id*. at ¶¶ 21-22; Dkt. No. 35-1 at 7.) At least two other courts have considered nearly identical surveys by the same counsel as here and found that "the survey does not plausibly

4

support Plaintiffs' claim." *Twohig*, 2021 WL 518021, at *5; *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *4 n.7 (S.D.N.Y. Oct. 27, 2020). Both courts concluded that the surveys—which posited nearly the identical questions as were asked here—are flawed. As the *Twohig* court noted,

> the survey presumes that the label conveys something about that origin, and it did not give participants the option of stating that they believed that the label conveyed nothing about the origin of the vanilla taste, (*id*.). While '[t]he role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the Plaintiff's factual allegations are sufficient to allow the case to proceed," *Doe v. Columbia University*, 831 F.3d 46, 59 (2d Cir. 2016), the survey here – designed at the behest of counsel who apparently has brought nearly 100 similar lawsuits challenging the labeling of vanilla flavored products and presumably has given significant thought to the questions – is sufficiently flawed that it does not contribute enough to render the claims plausible.

*Twohig*, 2021 WL 518021, at *5 (footnote omitted). The Court agrees. Plaintiff's attempt to distinguish the questions in the *Twohig* and *Pichardo* surveys is unavailing as any differences are immaterial. *See Twohig v. Shop-Rite Supermarkets, Inc*., No. 20-CV-763 (CS), Dkt. No. 15- 2 (First Amended Complaint, Ex. B) (S.D.N.Y. July 27, 2020); *Pichardo v. Only What You Need, Inc*., No. 20-CV-493 (VEC), Dkt. No. 22-1 (First Amended Complaint, Ex. 1) (S.D.N.Y. July 14, 2020). In any event, even without the survey's flaws, "the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word [vanilla] to mean or make plausible the allegation that reasonable consumers are misled by the term [vanilla]." *Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225, 1231 (9th Cir. 2019); *see also Yu v. Dr Pepper Snapple Group, Inc*., No. 18-CV-6664, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020) ("adding surveys cannot alone salvage implausible claims" of consumer deception).

Fourth, Plaintiff's reliance on *Kang v. P.F. Chang's China Bistro, Inc*., No. 20-55138, 2021 WL 463443, at *1 (9th Cir. Feb. 9, 2021), is unpersuasive. In *Kang*, the district court granted a motion to dismiss on the grounds that the plaintiff had not plausibly alleged that the "defendant's use of the term 'krab mix' in the ingredient list for certain of its sushi rolls [wa]s likely to deceive reasonable consumers into thinking that the sushi rolls contain at least some real crab meat when in fact they contain none." *Id*. at *1. The Ninth Circuit reversed because it was

5

plausible that a reasonable consumer might believe that "krab mix" was a mixture of real and imitation crab. *Id.* In so holding, the Ninth Circuit noted that "[b]ecause the term 'krab mix' lacks any commonly understood contrary meaning, we cannot say, in the absence of evidence bearing on the issue, that [plaintiff's] allegation is implausible on its face." *Id.* at *2.

*Kang* might provide support for Plaintiff's position if he was arguing that a reasonable consumer would interpret "Vanilla" to mean that the soymilk was flavored at least partially by beans from the vanilla plant. But he is not. He contends that a reasonable consumer would interpret the bald word "vanilla" to mean that the soymilk's vanilla flavor comes *exclusively* from the vanilla bean plant. (SAC at ¶ 11.) *Kang* held that a reasonable consumer would not interpret "krabmix" to mean they were purchasing a product made with 100% crab. *Id.* at *1. Similarly, here, it is not plausible that a reasonable consumer would interpret a product labeled as a "vanilla" product to mean that the vanilla flavor is derived *exclusively* from the vanilla bean plant. Such an inference is just too far a reach.

Finally, Plaintiff alleges that consumers are more likely to be confused here because the vanilla in a competing product, EdenSoy Vanilla Soymilk, has a similar price point and obtains its vanilla flavor exclusively from the vanilla plant. (*Id.* at ¶¶ 36-37.) Even accepting these allegations regarding EdenSoy's product as true, there is nothing in the SAC to suggest that consumers are aware that EdenSoy's vanilla flavoring comes exclusively from the vanilla plant, or that even if they did, that they would make the same assumption regarding the Product here. As such, these allegations fail to "nudge" Plaintiff's deception claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Accordingly, as Plaintiff has again failed to plausibly allege that a reasonable consumer would expect that soymilk labelled as "vanilla" derives its vanilla flavor *exclusively* from vanilla bean, all of his deception claims (claims 2-4) must again be dismissed.

### B. Plaintiff's UCL Unlawful Claim

Plaintiff's first claim for relief is under the unlawful prong of the UCL. His unlawfulness claim is based Defendant's alleged violation of the Sherman Act, and the Federal Food, Drug, and Cosmetic Act (FDCA) and its implementing regulations, as well as the violations of the CLRA

6

and false advertising laws discussed above. (SAC at ¶¶ 54- 59.) Because the Court has dismissed these latter claims, they cannot serve as a predicate for his UCL violation. *See Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001) (holding that UCL claims under the unlawful prong "stand or fall depending on the fate of the antecedent substantive causes of action.").

The Court thus turns to Plaintiff's contention that the Product is unlawful because it violates 21 C.F.R. § 101.22(i)(1) and the Sherman Act.³ (Dkt. No. 41 at 24-25.)

### 1. FDCA Regulations

Section 101.22 is entitled "Foods; labeling of spices, flavorings, colorings and chemical preservatives." Section 101.22(i)(1) provides in its entirety:

> (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:
>
> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".
>
> (ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."
>
> (iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the

---

³ Because the predicate violation is based on regulations which include no requirement that the public be likely to experience deception, the reasonable consumer standard does not apply. *See Silver v. BA Sports Nutrition, LLC*, No. 20-CV-00633-SI, 2020 WL 2992873, at *4 (N.D. Cal. June 4, 2020) (citing *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 472 (9th Cir. 2017) ("[T]he reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation.")).

7

> name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i)(1). As relevant here, this Section states that a manufacturer can label its product as a "vanilla" product so long as it contains no artificial ingredients that provide the vanilla flavor, although there are certain exceptions.

Plaintiff's SAC appears to allege that (1) his testing showed that the Product contains vanillin and maltol, (2) vanillin and maltol are artificial flavors, and (3) therefore the Product is mislabeled under 21 C.F.R. § 101.22(i)(1). (Dkt. No. 35 ¶¶ 27-31, 55-56.) Defendant's motion to dismiss explained why Plaintiff's allegation that vanillin and maltol are artificial ingredients is wrong. (Dkt. No. 38 at 17-19.) In his opposition, Plaintiff backed off from this allegation (Dkt. No. 41 at 23), and at oral argument when the Court asked Plaintiff whether he had a good faith basis for alleging that the vanillin and maltol in the Product were not natural ingredients, Plaintiff demurred, and for good reason. *See Barreto v. Westbrae Nat., Inc.*, No. 19-CV-9677 (PKC), 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021). Plaintiff has not alleged and cannot plausibly allege that that maltol and vanillin in the Product are artificial flavors; instead, Plaintiff has pivoted to two other theories as to how Defendant's label violates this FDA regulation even if the maltol and vanillin are natural flavors. Neither is plausible.

First, he asserts that the label violates § 101.22(i)(1)(ii). As relevant here, that subsection states that a manufacturer *cannot* call its product a "vanilla" product without any qualifier if the amount of natural vanilla in the product is "insufficient to independently characterize the food." In such circumstances, the name of the characterizing flavor, here, vanilla, "shall be immediately followed by the word 'flavored.'" *Id.* Plaintiff contends that the vanilla bean in the product is insufficient to independently characterize the Product's vanilla flavor. As support he identifies the Product test that shows that the flavoring ingredients most present in the Product are vanillin and maltol. (Dkt. No. 35-2 at 6.) But at oral argument, Plaintiff conceded that vanillin is or can be derived from the vanilla bean and that Plaintiff has no good faith basis for alleging that the vanillin in the Product is not from vanilla bean. Thus, the Product test does not make it plausible that the Product does not contain a sufficient amount of vanilla bean to give the Product its vanilla taste.

8

1    Plaintiff attempts to save his claim by arguing that Defendant conceded in its first motion
2    to dismiss that the amount of vanilla bean in its Product is insufficient to independently
3    characterize the Product's vanilla flavor.  In particular, he emphasizes Defendant's statement that
4    the product has "a touch of natural vanilla" and is "present in small amounts, providing the light
5    hint of vanilla typically used in soymilks." (Dkt. No. 41 at 23 (citing Dkt. No. 23 at 13).)
6    Defendant's statements do not support a plausible inference that Defendant's product does not
7    contain sufficient vanilla bean to independently characterize the vanilla flavor.  To the contrary,
8    Defendant instead argued that Plaintiff's original complaint admitted that the Product adds a
9    combination of flavorings, regardless of whether they have a vanilla taste, to "ensure 'greater
10   consistency in pricing, availability and quality.'" (Dkt. No. 23 at 12-13.)  Defendant then
11   explained: "The inclusion of such flavors does not mean that there is not enough vanilla extract to
12   supply the vanilla taste of the final product, or that the soymilk would still not have that 'touch' of
13   vanilla if the other natural flavors were removed.  It simply helps produce a satisfying, consistent,
14   high-quality product." (*Id.* at 13.)  Thus, Defendant argued the exact opposite of what Plaintiff
15   contends it admitted. Defendant's representation that its Product contains a "touch of natural
16   vanilla" does not support a plausible inference that it does not contain enough natural vanilla to
17   independently characterize the Product's vanilla flavor.  Plaintiff's reliance on *Zaback v. Kellogg*
18   *Sales Company*, Case No. 3:20-cv-00268-BEN MSB, 2020 WL 6381987 (S.D. Cal. October 29,
19   2020) misstates that court's holding, as Plaintiff conceded after oral argument.  (Dkt. No. 48.)
20   Second, at oral argument—but not in his opposition brief—Plaintiff argued that
21   Defendant's labelling of the Product violates § 101.22(i)(1)(iii).  That subsection provides:

> If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor".

26   This section means that if, for example, a product does not contain enough real vanilla to
27   independently characterize a product's vanilla flavor (hence, the product falls within (i)(1)(i)), *and*
28   the product contains other natural flavors which simulate, resemble or reinforce the vanilla flavor,

9

*then* the label must comply with (i)(1)(i) and have the word "natural" precede "vanilla" *and* it must also say "with other natural flavor" after the name of the food. But as explained above, Plaintiff has not alleged and cannot allege that the Product does not have a sufficient amount of vanilla to independently characterize its vanilla flavor; thus, this subsection does not apply.

Plaintiff has therefore not plausibly alleged that Defendant's labeling violates any federal regulations.

### 2. Sherman Act

With respect to the Sherman Act, Plaintiff lists various provisions which he contends Defendant violated, but the cited provisions are based on Plaintiff's false advertising claims and thus fail for the same reasons those claims fail. (SAC at ¶ 58.)

\*\*\*

Plaintiff has failed to state a claim under the UCL's unlawful prong based on either the FDCA regulations or the Sherman Act.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Because the Court has concluded that Plaintiff's SAC fails to state a claim, it need not and does not address Defendant's preemption, standing, or restitution arguments. The dismissal is without leave to amend as amendment would be futile given that Plaintiff has already filed three different complaints in this lawsuit, plus many times that number of complaints in the other unsuccessful vanilla labelling lawsuits brought by these same Plaintiff's counsel. Judgment for Defendant and against Plaintiff will be entered in a separate order.

This Order disposes of Dkt. No. 38.

**IT IS SO ORDERED.**

Dated: April 22, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge